UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN SCHNEIDER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CORNERSTONE PINTS, INC., et al.,<br><br>    Defendants. | No. 13 CV 4887<br><br>Judge Manish S. Shah |

ORDER

Defendants Anthony Zdanowicz and Michael Zdanowicz's motion for summary judgment [60] is granted in-part and denied in-part, and their motion to strike [75] is denied as moot.

STATEMENT

Plaintiffs are former bar employees who claim their general manager deleted hours they worked from the company's records. Plaintiffs allege violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), the Illinois Minimum Wage Law (820 ILCS 105/1 *et seq.*), and the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*). The general manager, defendant Jack Lewis, and the corporate employer, defendant Cornerstone Pints, Inc., have stipulated to liability in this case. Defendants Tony Zdanowicz and Mike Zdanowicz have not. Instead, they argue that as mere passive investors, they do not meet the statutory definition of "employer"—a prerequisite for liability under each of the three wage laws. Tony and Mike have moved for summary judgment on the issue.[1]

The FLSA, the IMWL, and the IWPCA all provide for liability against individuals who are "employers." All three laws define "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an

---

[1] Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

employee." 29 U.S.C. § 203(d); *see* 820 ILCS 105/3(c); 820 ILCS 115/2. The Seventh Circuit has not squarely addressed how—for the purposes of individual liability—district courts should apply this extremely broad definition.[2] (Applied literally, the definition would render personally liable every employee with even the slightest degree of supervisory responsibility.) Courts in this district have therefore turned to other circuits for guidance. *See, e.g.*, *Reynoso v. Motel LLC*, — F.Supp.3d ––, 2014 WL 5392034 (N.D. Ill. Oct. 21, 2014); *Driver v. AppleIllinois, LLC*, 2012 WL 4175010 (N.D. Ill. Sept. 19, 2012); *see also Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008); *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965–66 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *Donovan v. Agnew*, 712 F.2d 1509, 1511–14 (1st Cir. 1983). Courts agree that the determination requires consideration of the "economic realities," rather than formalistic labels or common law concepts of agency. *See Alvarez Perez*, 515 F. 3d at 1160; *RSR Sec. Servs., Ltd.*, 172 F.3d at 139; *Elliot Travel & Tours, Inc.*, 942 F.2d at 965; *Agnew*, 712 F.2d at 1511.

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer, along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Agnew*, 712 F.2d at 1511. To be personally liable, an officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Alvarez Perez*, 515 F.3d at 1160 (internal quotation omitted). Personal liability has been found in this district where the individual possesses a significant ownership interest coupled with day-to-day control of operations, including involvement in the supervision and payment of employees. *See Solis v. Intl. Detective & Protective Serv., Ltd.*, 819 F.Supp.2d 740, 748–49 (N.D. Ill. 2011) (collecting cases). Whether the facts demonstrate that a person or entity qualifies as an employer is a question of law. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985).

While not overwhelming, plaintiffs' evidence in this case supports the conclusion that Mike and Tony were plaintiffs' employers. To begin, Mike and Tony both owned a significant share of the company—one third each. In addition, both defendants had some degree of day-to-day control of operations. It is undisputed that Mike called the restaurant every day to see how things were going. He would ask: "Is Jack there? When did he leave? What did he do today? What's going on tonight? Is there a party? Who is working?" [78] ¶ 13. Mike testified that, sometimes, if he saw

---

[2] In *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987), the court noted, as an aside, that an employee can be an "employer" under the FLSA in relation to another employee, provided the first employee had supervisory authority over the second and was responsible in whole or in part for the alleged violation.

the bank account was low, he would communicate to Lewis that "he needed to deposit the money and [Mike] needed to have it to pay bills . . . ." [62-2] at 36. When an employee named Josh Spooner stopped working at the bar, Mike was "the one who sent the e-mail to [his insurance agent] friend saying terminate Josh Spooner, he no longer works for us." *Id*. at 10. Mike monitored the restaurant's financials, including the cost of rent, cost of goods, and "the bottom line." [78] ¶ 19. Every morning Mike reviewed daily sales reports, which showed the restaurant's total sales and labor costs. *Id*. ¶¶ 21-22. When Mike thought labor costs were too high, he told Lewis about it. *Id*. ¶ 23. Tony likewise reviewed the daily sales report, including the section on labor costs. *Id*. ¶ 24. Tony had weekly discussions with Lewis about the bar, including about how it was losing money. *Id*. ¶ 25. Lewis emailed Mike and Tony about how Lewis was fixing, correcting, and adjusting labor costs at the restaurant. *Id*. ¶ 26. When changes to the restaurant required funds, Mike and Tony had to approve of the changes because they were the source of funds. *Id*. ¶ 31. Although the restaurant lost money in its first life as a franchise, Mike and Tony decided not to close it down because they had outstanding personal guarantees on the lease and owed money on the equipment. *Id*. ¶ 32.

Most significantly, plaintiff Megan Schneider testified that when she asked Lewis about her compensation, on three occasions he responded that he would have to speak with Mike and Tony about it. [62-4] at 5, 8, 32. Defendants object to this evidence and argue that it is inadmissible hearsay. This evidence is admissible, however, because Lewis's statements are being offered against Mike and Tony and were made by their agent or employee on a matter within the scope of that relationship and while it existed. Fed. R. Evid. 801(d)(2)(D).

Taken together, all this evidence is sufficient to mostly defeat defendants' motion for summary judgment. At the same time, though, given conflicting evidence set forth by defendants, including Lewis denying that he ever consulted Mike or Tony regarding how much to pay the employees, *see* [62-1] at 17, it cannot be concluded as a matter of law on this record that Mike and Tony were employers.

Finally, under the IWPCA, a plaintiff may also prove that an officer defendant was her employer by showing he "knowingly permit[ted] such [corporate] employer to violate the provisions of [the IWPCA]." 820 ILCS 115/13. Plaintiffs argue they have set forth sufficient evidence to maintain a claim under this theory. They point out that Mike and Tony received communications from Lewis confirming that he was "fixing" labor costs at the restaurant, and it was during this time when Lewis was deleting plaintiffs' hours from the bar's records. [68] at 19. Lewis told Schneider he deleted hours because he felt pressure from Mike and Tony to cut costs and save money. *Id*. From this, plaintiffs argue that "a reasonable jury could find that by telling Jack labor costs were too high, Mike intended to communicate that Jack should lower them, retroactively." *Id*. I disagree. It would not be reasonable to infer

that by telling his business partner that labor costs were too high, a very mundane and common business concern, Mike was actually and specifically directing Lewis to violate federal and state labor laws. Summary judgment is therefore granted in favor of defendants on plaintiffs' 820 ILCS 115/13 claims.[3]

ENTER:

Date: 05/06/15

Manish S. Shah
U.S. District Judge

---

[3] Defendants have also moved to strike portions of plaintiffs' response to their Local Rule 56.1 statement of facts. [75]. That motion is denied as moot because this decision does not rest on the complained of responses.